UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

BETH HOLLINS,

    Plaintiff,

    v.                                                                      Case No. 2:20-CV-304 JD

CHURCH CHURCH HITTLE + ANTRIM,
et al.,

    Defendants.

## OPINION AND ORDER

The Court now considers a motion for preliminary approval of a class settlement. (DE 31.) In the proposed settlement agreement, the parties agree to relief in the amount of $4,000 for the class, $1,000 for the class representative, and a ceiling of $14,000 in attorneys' fees and costs. The Court denies the motion without prejudice, as insufficient information has been submitted to the Court to allow it to determine whether the settlement is fair, reasonable, and adequate.

**A.**    **Factual Background**

According to the allegations in the Complaint, Defendants Church Church Hittle + Antrim and Elizabeth Barnes attempted to collect an alleged $81.52 medical debt incurred by Plaintiff Beth Hollins. (DE 1 ¶ 17.) The Defendants were allegedly collecting this debt on behalf of creditor Aberdeen Ventures. (*Id.* ¶ 18.) On August 19, 2019, the Defendants sent Hollins two letters in which they threatened or implied that litigation might be instituted against her, writing that "we may . . . take legal action against you for the collection of the above amount," "we may file suit against you," and that while "Aberdeen Ventures does not wish to file suit against you . .

. we will proceed as necessary." (*Id.* ¶ 28.) However, according to the Complaint, the Defendants never actually intended to initiate litigation. (*Id.* ¶ 29.)

Plaintiff Beth Hollins brought one claim under the Fair Debt Collection Practices Act ("FDCPA"), asserting this claim individually and on behalf of a putative class. On January 7, 2021, Plaintiff, as an individual and representative of the class, filed a motion seeking preliminary approval of a class settlement and certification of a putative class for settlement purposes. (DE 31.) According to the settlement, this putative class consists of:

> (a) all individuals (b) to whom defendant Church Church Hittle + Antrim sent a letter seeking to collect a medical or healthcare debt stating (i)"[W]e may . . . take legal action against you for the collection of the above amount", or (ii) "[W]e may file suit against you" or (iii) "[client] does not wish to file suit against you. However, if you do not pay or make payment arrangements, we will proceed as necessary"; (c) on behalf of Aberdeen Ventures d/b/a Immediate Care Center, (d) which letter was sent at any time from August 18, 2019 through and including September 8, 2020.

(DE 31-1 at 4.) As relevant here, the settlement provides for relief to class members in the amount of $4,000, which will be distributed evenly among the class members who submit a claim form and do not exclude themselves from the settlement. (DE 31-1 at 4.) The settlement separately provides for $1,000 to Beth Hollins as the Plaintiff and Class Representative. Finally, the settlement provides that Plaintiff may petition the Court for approval of attorneys' fees and costs in the amount of $14,000 and that Defendants will pay those fees as the Court deems reasonable up to $14,000.

Defendants have not filed any objection to the motion for preliminary approval of the class settlement. (DE 31.) Accordingly, the motion is ripe for review.

**B.      Legal Standard**

Federal Rule of Civil Procedure 23(e) provides that the claims of a class proposed to be certified for purposes of settlement may only be settled with the court's approval. Ultimately, the Court may approve a proposed settlement if the Court determines it is fair, reasonable, and adequate. *Kaufman v. Am. Express Travel Related Servs. Co., Inc.*, 877 F.3d 276, 283 (7th Cir. 2017). Ensuring that a settlement is fair, reasonable, and adequate helps address the concern "for the unnamed class members whose interests the named plaintiffs represent and the settlement is meant to serve." *In re Subway Footlong Sandwich Mktg. & Sales Pracs. Litig.*, 869 F.3d 551, 556 (7th Cir. 2017). This inquiry is also meant to check the "tendency of class settlements to yield benefits for stakeholders *other than* the class." *Id.*

Rule 23(e)(1) lays out certain procedures that must be followed prior to final approval of a settlement. As an initial matter, the parties must provide the court with information sufficient to enable the court to determine whether to give notice of the proposed settlement to the class. Fed. R. Civ. P. 23(e)(1)(A). In 2018, Rule 23(e) was amended to "provide guidance to federal courts considering whether to grant preliminary approval of a class action settlement." *Nistra v. Reliance Tr. Co.*, No. 1:16-CV-04773, 2020 WL 13645290, at *1 (N.D. Ill. Mar. 12, 2020). In "deciding whether to send notice" the Court must determine whether "it likely will be able both to approve the settlement proposal under Rule 23(e)(2) and, if it has not previously certified a class, to certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e), Committee Notes.

If the district court finds that it will likely approve the settlement and certify the class, the court must then direct the parties to provide notice "in a reasonable manner to all class members who would be bound" by the proposed settlement agreement. Fed. R. Civ. P. 23(e)(1). For any Rule 23(b)(3) class proposed to be certified for purposes of a settlement under Rule 23(e), "the

3

court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). This notice requirement "is designed to guaranty that those bound by the ruling in a class action were accorded their due process rights to notice and an opportunity to be heard." *Chaffee v. A&P Tea Co.*, Nos. 79 C 2735 and 79 C 3625, 1991 WL 5859, at *2 (N.D. Ill. Jan. 16, 1991).

**C.     Discussion**

When determining whether preliminary approval of a class action settlement should be granted, district courts must be especially scrupulous. "American judges are accustomed to presiding over adversary proceedings" and "expect the clash of the adversaries to generate the information that the judge needs to decide the case." *Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014). This puts the Court at a disadvantage when evaluating the fairness of the settlement, where the clash of adversaries is absent. Furthermore, there are often incentives pushing both plaintiff's counsel and defendants away from maximizing the value to the class: "class counsel, in complicity with the defendant's counsel, [has an incentive] to sell out the class by agreeing with the defendant to recommend that the judge approve a settlement involving a meager recovery for the class but generous compensation for the lawyers – the deal that promotes the self-interest of both class counsel and the defendant and is therefore optimal from the standpoint of their private interests." *Creative Montessori Learning Centers v. Ashford Gear LLC*, 662 F.3d 913, 918 (7th Cir. 2011). Due to the lack of adversity and the incentives of the parties, proposed class action settlements demand "intense judicial scrutiny," *Eubank*, 753 F.3d at 721, where the district court judge acts as "a fiduciary of the class, who is subject therefore to

4

the high duty of care that the law requires of fiduciaries." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 780 (7th Cir. 2014) (citation and quotation marks omitted).

In determining whether to grant preliminary approval, the Court must consider: (1) the strength of the plaintiffs' case on the merits compared to the amount of the defendants' settlement offer, (2) an assessment of the likely complexity, length and expense of the litigation, (3) an evaluation of the amount of opposition to the settlement among affected parties, (4) the opinion of competent counsel, and (5) the stage of the proceedings and the amount of discovery completed at the time of settlement. *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014); *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

"The most important factor relevant to the fairness of a class action settlement is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Wong*, 773 F.3d at 864 (quotation marks and citations omitted). When analyzing the strength of a plaintiff's case, the Court "should 'estimat[e] the range of possible outcomes and ascrib[e] a probability to each point in the range.'" *Synfuel Techs.*, 463 F.3d at 653 (quoting *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 285 (7th Cir. 2002)). While "'a high degree of precision cannot be expected in valuing a litigation,' the court should nevertheless 'insist that the parties present evidence that would enable possible outcomes to be estimated,' so that the court can at least come up with a 'ballpark valuation.'" *Id.* at 653 (quoting *Reynolds,* 288 F.3d at 285). Ultimately, the Court should quantify "'the net expected value of continued litigation to the class.'" *Id.* (quoting *Reynolds,* 288 F.3d at 284–85).

### (1) Strength of Case

The Court lacks the information necessary to evaluate the strength of the Plaintiff's case on the merits. The parties assert that "they have analyzed the legal and factual issues presented in

this action, the risks and expense involved in pursuing this Litigation to conclusion, the likelihood of recovering damages in excess of those obtained through this settlement, the protracted nature of litigation, and the costs and possible outcomes of one or more procedural and substantive appeals." (DE 31 at 2.) These are all insufficient conclusory statements. Counsel, as they are well aware, must actually provide the court with evidence to enable the Court to conduct its analysis. For example, in *Tabiti v. Lvnv Funding, LLC*, No. 13-CV-7198, 2019 WL 13261836, at *1 (N.D. Ill. Oct. 11, 2019), our sister court in the Northern District of Illinois explained to the plaintiff's counsel (who happens to be the same counsel as Plaintiff's in this case) that the cursory, boilerplate explanation provided by plaintiff's counsel left "the court in the dark about what the risks are" and left the "court unable to perform" the "ballpark" analysis required. The boilerplate explanation provided in *Tabiti* to our sister court in the Northern District of Illinois is the exact same explanation as that provided in this case, and this Court is similarly left in the dark. Counsel must supplement their motion with information allowing this Court to assess the range of possible outcomes in this case.

### (2) Requirement to Submit Claim Form

The Court is also concerned with this settlement given that it (1) requires class members to submit a valid claim form and (2) only provides for a recovery of about $2.34 per class member. If a claim form is required, the $2.34 per class member is misleading, and relies on the flawed assumption that every class member will submit a valid claim. The claim rate is almost always well below 100-percent. *See e.g.*, *Pearson*, 772 F.3d at 782 ("[I]n consumer class actions . . . the percentage of class members who file claims is often quite low (in this case it was . . . one quarter of one percent)."); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) ("The reality is that in a class action settlement like this one, there is never a one-hundred percent claim

rate or anything close to it"). Furthermore, coupling a modest monetary award with a requirement to fill out a claim form is "bound to discourage filings." *Pearson*, 772 F.3d at 783 (explaining that "the notice and claim forms, and the very modest monetary award that the average claimant would receive, were bound to discourage filings"); *see also* 4 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 13:53 (6th ed. 2022) (explaining that "requiring potential claimants to fill out a form in order to collect from the settlement fund . . . may call into question the settlement's fairness if the claims are small and class members have little incentive to fill out the forms").

    The Court questions why requiring the class to fill out claim forms in this instance is necessary. The proposed class consists of "approximately 1,710 people" who were sent a letter by the Defendants featuring allegedly misleading language. Given that the conduct underlying the Complaint involved mailing letters to individuals at certain addresses, it seems likely that the parties would be able to identify which individuals are entitled to payout based on this information alone. Where a defendant holds information that would allow it to pay claims automatically, other district courts have found the requirement that class members submit a claim form unreasonable. *See De Leon v. Bank of Am., N.A. (USA)*, No. 6:09-CV-1251-ORL-28, 2012 WL 2568142, at *20 (M.D. Fla. Apr. 20, 2012) ("In view of the factors that will surely result in a low claims rate here, a settlement that does not require class members to submit a claim form to receive payment would be preferable in this case."); *see also In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011) (approving of agreement, in part, because the "Settlement Class Members do not have to submit claims or take any other affirmative step to receive relief under the Settlement. . . . BofA and the Settlement Administrator will distribute the

7

Net Settlement Fund to all identifiable Settlement Class Members who do not opt out of the Settlement and who are entitled to a distribution under the formula provided in the Settlement").

Currently, Plaintiff's counsel includes no explanation as to why this claim process is reasonable. The Court does not see why it is necessary or reasonable given the small monetary value of the proposed settlement to each class member and the fact that Defendants appear to have information that will enable them to determine who is a class member and then send payment directly to those class members. In any future motion for preliminary approval, Plaintiff's counsel should provide an explanation explaining why direct payment without requiring a claims form would be unreasonable.

### (3) Attorneys' Fees

In a common fund case, when determining the reasonableness of proposed attorneys' fees, "a district court may choose either the percentage method or the lodestar method." *In re Stericycle Sec. Litig.*, 35 F.4th 555, 560 n.2 (7th Cir. 2022); *Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014). Under the percentage method, "[t]he ratio that is relevant to assessing the reasonableness of the attorneys' fee that the parties agreed to is the ratio of (1) the fee to (2) the fee plus what the class members received." *Redman v. Radioshack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014); *Pearson*, 772 F.3d at 781. "Basing the award of attorneys' fees on this ratio, which shows how the aggregate value of the settlement is being split between class counsel and the class, gives class counsel an incentive to design the claims process in such a way as will maximize the settlement benefits actually received by the class, rather than to connive with the defendant in formulating claims-filing procedures that discourage filing and so reduce the benefit to the class." *Pearson*, 772 F.3d at 781. The Seventh Circuit has explained that under the ratio method "[t]he *presumption* should . . . be that

attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel. " *Id.* at 782.

The alternative lodestar method often has been described as a way to cross-check the percentage method. *In re Sears, Roebuck & Co. Front-Loading Washer Prod. Liab. Litig.*, 867 F.3d 791, 793 (7th Cir. 2017) (presumption established in *Pearson* is "not irrebuttable" and where there is a "difficult case" where counsel expended "extensive time and effort" a fee in excess to the benefit to the class may be justified); *In re TikTok, Inc., Consumer Priv. Litig.*, No. 20 C 4699, 2022 WL 2982782, at *25 (N.D. Ill. July 28, 2022) ("Courts frequently use the percentage method in the first instance and cross-check the amount using the lodestar method."). Under the lodestar method, the court multiplies the reasonable number of hours worked by the reasonable hourly rate of counsel to produce what is called the "lodestar." *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 974 (7th Cir. 1991). The lodestar then may be multiplied in order to compensate the attorney for the "size [of] the risk the attorney assumed at the outset by taking this type of case." *Id.*

Using the lodestar method as a cross-check on the percentage method has two functions. In situations where the relief to class members is substantial, the "explicit accounting of hours and rates provides greater accountability" and may prevent "over-compensation for attorneys." *Harman*, 945 F.2d at 974. On the other hand, where the percentage method yields what may be a relatively low fee award, counsel may present an explicit accounting of hours and rates in order to provide them an award that compensates them fairly for the amount of effort expended and risk undertaken. *In re Sears, Roebuck & Co. Front-Loading Washer Prod. Liab. Litig.*, 867 F.3d at 793.

In the proposed settlement, the Defendants agree to pay attorney "fees that the Court deems reasonable up to $14,000.00." (DE 31-1 at 3.) However, in the motion for preliminary approval, Plaintiff's counsel fails to provide the Court with any analysis under either the percentage method or the lodestar method explaining why such a fee is reasonable. Rather, in a conclusory, boilerplate paragraph Plaintiff's counsel assert that the percentage method laid out in *Pearson* and *Redman* does not apply because the "FDCPA is a fee shifting statute and the fees being awarded to the Class would not come from the Class Recovery but rather by payment directly from Defendants, pursuant to the fee shifting provision of the FDCPA . . . ." (DE 31 at 9.)

The Plaintiff cites no authority for the proposition that the percentage method as set forth in *Pearson* and *Redman* does not apply. While it makes sense why the parties do not want such a method to apply (after all, if the percentage method is applied to the potential $14,000 fee, the attorneys take an extraordinary 74% fee)[1], an explanation with citations to pertinent case law is needed. The Seventh Circuit has previously indicated that in class actions brought pursuant to other statutes containing a fee shifting provision, where a common fund was created pursuant to a settlement, "equitable principles" continue to govern the court's award of attorney's fees. *See Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 564 (7th Cir. 1994) (explaining that "common fund principles properly control a case which is initiated under a statute with a fee-shifting provision, but is settled with the creation of a common fund . . . ."); *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 254–55 (7th Cir. 1988) ("GM argues that because the plaintiffs sought relief under the Magnuson-Moss Act, its fee-shifting provision should control the award

---

[1] The Seventh Circuit in *Pearson* described a 69% attorneys' fee as "outlandish." *Pearson*, 772 F.3d at 781.

10

of their attorneys' fees. These conclusions are incorrect and insupportable [as] [n]either the Magnuson-Moss Act itself nor cases involving common funds and other fee-shifting statutes lead us to conclude that the fee-shifting provision of the Magnuson-Moss Act should affect the fee determination in this case, which was settled, resulting in a common fund."). Plaintiff fails to explain why equitable principles, allowing for application of either the percentage method or the lodestar method, do not apply to the settlement in this case.

The settlement agreement also purports to say that the amount of attorneys' fees is "in addition to and separate from the Class Recovery." (DE 31-1 at 3.) Perhaps by using this language the Defendants were trying to sidestep the application of equitable principles that typically apply to common fund cases. However, the Court is unsure what this line of argument signifies beyond a mere formalistic turn of phrase or why it counsels against applying the same equitable principles that the Seventh Circuit applied in *Florin*. The Seventh Circuit has previously advised that a "judge must assess the value of the settlement to the class and the reasonableness of the agreed-upon attorneys' fees for class counsel, bearing in mind that the *higher the fees the less compensation will be received by the class members*." *Redman*, 768 F.3d at 629 (emphasis added). Given that a defendant when negotiating is not concerned about the apportionment of the amount settled for between the class and class counsel, but rather its bottom line, it seems unrealistic that the defendant somehow partitions the decision of what compensation they are willing to pay the class from what compensation they are willing to pay counsel. Rather, the decision to cap the attorneys' fees at $14,000 almost certainly caused the compensation received by the class members to be reduced by some amount. This amount may not be precisely $14,000, given that the settlement provides for a ceiling of $14,000 and not

necessarily an agreed-upon amount, but it certainly diminished the class's compensation in some form.

Furthermore, if Plaintiffs' counsel are not receiving their fees from a common fund based on equitable principles, it is unclear what entitles counsel to attorneys' fees. Plaintiff's counsel argues that the percentage method cannot be used because the "FDCPA is a fee shifting statute and the fees being awarded to the Class would not come from the Class Recovery but rather by payment directly from Defendants, pursuant to the fee shifting provision of the FDCPA as set out in Section 1692k(a)(3)." (DE 31 at 9.) The FDCPA's fee-shifting provision makes "any debt collector who fails to comply with any [of its] provisions" liable for "the costs of the action, together with a reasonable attorney's fee as determined by the court" in "the case of any *successful* action to enforce the foregoing liability . . . ." 15 U.S.C. § 1692k(a)(3) (emphasis added). On its face, the fee shifting statute does not apply here because: (1) by the terms of the settlement Defendants deny they "violated the FDCPA and deny all liability" (DE 31-1 at 3), so there has been no determination that they "fail[ed] to comply" with the FDCPA; and (2) 1692k(a)(3) states that costs and reasonable fees may be given in "a *successful* action to enforce the foregoing liability," but again the Defendants have not admitted any fault and deny all liability.

The Seventh Circuit has also determined that in order for 1692k(a)(3) to entitle a party to an award of fees and costs that party must be a "prevailing party," *Dechert v. Cadle Co.*, 441 F.3d 474, 476 (7th Cir. 2006), which ordinarily requires that "a plaintiff [must] receive at least some relief on the merits of his claim . . . ." *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598, 603–04 (2001) (quoting *Hewitt v. Helms*, 482 U.S. 755, 759–60 (1987)). There has been no relief on the merits in this

12

case. *Dechert* also goes on to indicate that a "successful action" under the FDCPA must include "liability for either actual or statutory damages." *Dechert*, 441 F.3d at 475; *Bordeau v. N. Serv. Bureau, Inc.*, No. 20-CV-282-JDP, 2020 WL 6261691, at *1 (W.D. Wis. Oct. 23, 2020) (citing *Dechert* for this proposition). However, because Defendants do not admit fault and deny liability, there has been no determination that the Defendants are liable for actual or statutory damages.

Based on the precedent cited above, if it is counsel's position that 1692k(a)(3) entitles them to attorneys' fees, then they must come forward with legal analysis with the requisite citations to support their position.

The Court notes that even if it cannot use equitable principles to analyze the reasonableness of the fee award and the percentage method as cited in *Redman* and *Pearson*, Plaintiff's counsel fail to provide any information to show its requested fees are reasonable under the lodestar method. Counsel does not provide the Court with any breakdown of the hours expended working on this case, the position of the individual who billed the hours, or the rate billed. The Court needs some sort of evidence filed in this manner, especially because this case appears to have settled only three months after filing the Complaint and because Plaintiff's counsel appears to have used largely boilerplate language in their motion for preliminary approval.

Again, that the Court needs further information and argument should not come as a surprise to Plaintiff's counsel. In a prior case with our sister court in the Northern District of Illinois, *Tabiti*, Plaintiff's counsel submitted a motion containing almost the exact same language relating to attorney's fees. *See Tabiti*, No. 13-CV-7198, 2019 WL 13261836, at *3 (explaining, in a prior case involving Plaintiff's counsel, that their "proposed settlement agreement . . . appears to be a common fund settlement dressed in statutory fee-shifting language."). Also

similar to the instant case, in that case Plaintiff's counsel failed to "cite[] or offer[] cogent argument establishing that common fund principles are inapplicable." *Id.* If counsel has case law in support of their position, they should cite it if they choose to refile their motion.

**D.     Conclusion**

For the foregoing reasons, the Court DENIES the Plaintiff's motion seeking preliminary approval without prejudice. (DE 31) Any refiled motion for preliminary approval is due within 21 days after the entry of this order.

SO ORDERED.

ENTERED: April 3, 2023

> /s/ JON E. DEGUILIO
> Chief Judge
> United States District Court