## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

|  |  |  |
|---|---|---|
| BETH HOLLINS, | ) | |
| on behalf of Plaintiff and a class, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 20-cv-00304-JD-APR |
| vs. | ) | |
| | ) | |
| CHURCH CHURCH HITTLE + ANTRIM, | ) | |
| a partnership; and ELIZABETH | ) | |
| LUCAS BARNES; | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S COMBINED AMENDED UNOPPOSED
## MOTION AND MEMORANDUM IN SUPPORT OF
## <u>PRELIMINARY APPROVAL OF CLASS SETTLEMENT</u>

/s/ Heather Kolbus
Heather Kolbus

Daniel A. Edelman
Heather Kolbus
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, IL   60603
(312) 739-4200

On April 3, 2023, this Court entered an order denying without prejudice, Plaintiff's Renewed Motion for Preliminary Approval of Class Settlement. (*Dkt. Nos. 31, 35*) Plaintiff Beth Hollins ("Plaintiff"), individually and as representative of the class, respectfully submits this amended motion preliminary approval of the class settlement to addresses the issues identified in the Court's April 3, 2023 order. (*Dkt. No. 35*)

The parties have reached an agreement to resolve this case whereby Defendants will create a class settlement fund of $4,000.00, which equates to approximately 94% of the *maximum* amount that a class could recover if *both* Defendants were found liable at trial. *See* 15 U.S.C. § 1682k(A)(2)(B) (statutory damages available to a class under the FDCPA are limited to "the lesser of $500,000 or 1 per centum of the net worth of the debt collector").

Separate and apart from the settlement fund dedicated to the class, Defendants have also agreed to pay, Plaintiff's statutory damages, Class Counsel's attorneys' fees and expenses, and the costs of administering the settlement and providing direct mail notice to each class member.

Finally, as a result of Plaintiff's litigation, and as to the debts collected for Aberdeen Ventures, Defendants no longer use the collection letter or methods complained of by Plaintiff, eliminating the risk of future harm to the class or any other consumers. Considering the statutorily-limited damages available to the settlement class under the FDCPA, the settlement represents an excellent result for consumers.

For the reasons set forth below, this Court should enter an order which (i) preliminarily certifies a class for settlement purposes; (ii) preliminarily approves the Class Settlement Agreement ("Agreement") attached as Appendix A; (iii) sets deadlines for Class Members to submit claim forms, opt-out, and object, (iv) appoints Beth Hollins as Class Representative and Edelman, Combs, Latturner & Goodwin, LLC as Class Counsel; (v) schedules a hearing for final

1

approval of the Agreement; (vi) approves the mailing of notice and claim form to the Class in the form of Exhibit 1 to Appendix A; and (vii) finds that the mailing of such notice satisfies due process and Fed. R. Civ. P. 23. A copy of the proposed preliminary approval order is attached as Exhibit 2 to Appendix A.

## SUMMARY OF THE CLAIMS

Plaintiff, individually and on behalf of the Class, filed the above-captioned action alleging that Defendants Church Church Hittle + Antrim ("Defendant Church Hittle") and Elizabeth Lucas Barnes ("Defendant Barnes") (collectively, "Defendants") violated §§ 1692e, 1692e(2), 1692e(5) and 1692e(10) of Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. § 1692 *et seq.* Specifically, Plaintiff alleges that Defendants sent collection letters to consumers which made false and misleading representations by threatening or implying a lawsuit would be filed when Defendants had no intention to file suit. Plaintiff alleged that she was intimidated, misled and confused by the conduct complained of, and she spent time dealing with such conduct and consulted counsel as a result. This, among other things, forced plaintiff into chapter 13 bankruptcy. Defendants deny Plaintiff's allegations.

## SUMMARY OF THE SETTLEMENT TERMS[1]

The details of the Settlement are contained in the Settlement Agreement and Release signed by the parties, a copy of which is attached as Appendix A ("Agreement"). For purposes of preliminary approval, the following summarizes the material terms of the Agreement:

**Settlement Class Definition:** The Agreement defines a settlement class under Rule 23(b)(3) comprised of:

(a) all individuals (b) to whom defendant Church Church Hittle + Antrim sent a letter seeking to collect a medical or healthcare debt stating (i) "[W]e may . . . take legal action

---

[1] Any undefined capitalized terms shall have the meaning attributed to them in the parties' Settlement Agreement, which is being submitted contemporaneously herewith.

against you for the collection of the above amount", or (ii) "[W]e may file suit against you" or (iii) "[client] does not wish to file suit against you. However, if you do not pay or make payment arrangements, we will proceed as necessary"; (c) on behalf of Aberdeen Ventures d/b/a Immediate Care Center, (d) which letter was sent at any time from August 18, 2019 through and including September 8, 2020.

Based on the records produced by Defendants, there are approximately 1,710 individuals in the class.

**Class Recovery:** The Agreement provides that Defendants will create a class settlement fund of $4,000.00 ("Class Recovery") to be distributed equally and entirely among the Class Members who timely submit a valid claim form and do not timely exclude themselves from this settlement. No portion of the Class Recovery shall revert back to Defendants. (Appendix A, ¶¶ 11 and 15d.). Based on a conservative response rate between 5% to 10%, Plaintiff's counsel anticipates that each class member that submits a valid claim form will receive approximately $46 (at 5% response) to $23 (at 10% response).

**Plaintiff's Recovery.** Subject to the Court's approval, Defendants have agreed to pay Plaintiff $1,000.00, the amount recoverable in an individual action under the FDCPA, 15 U.S.C. 1692k(a)(2)(A) in recognition of her contribution to the successful outcome of the case and role as class representative. *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). Any service award approved by this Court will be paid separate and apart from the Class Recovery and will not reduce it, or the amount distributed to the Settlement Class.

**Attorneys' Fees and Costs.** Counsel for Plaintiff and the Class shall petition the Court for approval of attorneys' fees and costs in the amount of $14,000.00.[2] Defendants shall pay those fees that the Court deems reasonable up to $14,000.00. Any attorney fees and costs approved by

---

[2]  Counsel for the Plaintiff intend to pay as a referral fee 20% of the fees and costs awarded to attorney Michael P. McIlree. Counsel for the Plaintiff are informing the Court of this arrangement for disclosure purposes only.

the Court will be paid by Defendants separate and distinct from the Class Recovery and will in no way reduce the amount Defendants have agreed to pay to the Settlement Class.[3]

**Cost of Class Notice and Administration.**  Defendants have further agreed to pay all costs of notice and administration of the settlement. These costs are also being paid by Defendants separate from the Class Recovery. (<u>Appendix A</u>, ¶14)

<u>**ARGUMENT**</u>

## I.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

As the Seventh Circuit has recognized, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.41 (4th ed. 2002) (citing cases).

Under Rule 23(e) of the Federal Rules of Civil Procedure, a class-action settlement may be

---

[3] Concurrent with this motion, Plaintiff's counsel is filing a Preliminary Notice of Attorney's Fees which details the fees and costs incurred by counsel to date.  To date, Class Counsel has incurred more than $30,000.00 in attorney's fees and costs and this amount does not include the time Plaintiff's Counsel will spend preparing for, and appearing at, future hearings related to the Settlement or class member inquiries concerning the Settlement.

approved if the settlement is "fair, reasonable, and adequate." *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010). "Approval of a class action settlement is a two-step process." *In re Northfield Labs., Inc. Sec. Litig.*, No. 06 C 1493, 2012 WL 366852, at *5 (N.D. Ill. Jan. 31, 2012) citing *In re AT & T Mobility*, 270 F.R.D. at 346 (quoting *Armstrong*, 616 F.3d at 314). "First, the court holds a preliminary, pre-notification hearing to consider whether the proposed settlement falls within a range that could be approved." *Id.* "If the court preliminarily approves the settlement, the class members are notified." *Id.*

Rule 23 – and particularly the portions thereof dealing with settlement – was amended in December 2018. The first step in the amended process requires that counsel submit the proposed terms of settlement to the district court, along with "information sufficient to enable [the court] to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A) (2018). This is so the Court may make "a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms[.]" Fed. Judicial Ctr., Manual for Complex Litigation § 21.632 (4th ed. 2004); *see also* 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions, § 11.25 (4th ed. 2002).

The new Fed. R. Civ. P. 23(e) states that grounds exist for class notice where the parties show that "the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Where, as here, the proposed settlement would bind class members, it may only be approved after a final hearing and a finding that it is fair, reasonable, and adequate, based on the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account: (i) the costs,

5

risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). If the court preliminarily finds that the settlement is fair, adequate, and reasonable, it then "direct[s] the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Id.*; Fed. R. Civ. P. 23(e)(1)(B) (2018).

The second step in the process is a final fairness hearing. Fed. R. Civ. P. 23(e)(2) (2018); see also Fed. Judicial Ctr Manual for Complex Litigation, § 21.633-34; *In re Northfield Labs*, 2012 WL 366852, at *5. As explained below, consideration of these factors supports preliminary approving the Settlement and issuing notice.

## II. PLAINTIFF AND HER COUNSEL HAVE ADEQUATELY REPRESENTED THE CLASS AND THERE HAS BEEN NO FRAUD OR COLLUSION

By their very nature, class actions readily lend themselves to compromise because of the many uncertainties of outcome, difficulties of proof, and their often, lengthy duration. Indeed, there is an "overriding public interest in favor of settlement," particularly in class actions that have the well-deserved reputation as being most complex. *In re: Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *6 (N.D. Ill. Feb. 29, 2016); *Armstrong*, 616 F.2d at 313 ("Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources."). This matter is no exception. Here, the Parties entered into the settlement only after both sides were fully apprised of the facts, risks, and obstacles involved with protracted litigation.

In researching and preparing the operative complaint, Plaintiff's Counsel conducted a thorough analysis of Defendants' collection practices, including researching Defendants' practices related to filing collection litigation, use of the collection letter sent to Plaintiff generally, as well as specifically in the context of the type of debt sought from Plaintiff. Thus, at the outset of the litigation, Plaintiff's counsel had a basic understanding of the methods and scope of Defendants' debt collection practices. *See Dkt. No. 1.*

Shortly after appearing in the litigation, Defendants represented that they had very limited assets and that continued litigation would diminish Defendants' ability to satisfy a class-wide judgment. Plaintiff's counsel sought and obtained detailed financial information from Defendants, including various financial statements, balance statements and insurance coverage documents. After reviewing this information, Plaintiff's counsel was satisfied that, based on the Defendants' limited resources, further protracted litigation might risk any recovery at all for the class and thus, it was in the best interest of the class to explore an early resolution. *E.E.O.C. v. Hiram Walker & Sons*, 768 F.2d 884, 889 (7th Cir.1985). Plaintiff's counsel focused their efforts to reach a sensible resolution to this matter at an early juncture so as to not diminish any recovery available to the class by unnecessarily protracting the litigation.

The parties, through their counsel, engaged in informal discovery and information sharing concerning (i) the claims and potential defenses at issue in Plaintiff's Complaint; (ii) the size of the potential class contemplated in the Complaint; and (iii) each of the Defendants' net worth.

Through these settlement negotiations, the parties completed a sufficient amount of discovery to be able to place value on their respective positions in this case. *In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 793 (N.D. Ill. 2015) (granting preliminary approval to class settlement where the parties exchanged discovery over a six-month period). Plaintiff and

7

her counsel strongly believe that the proposed Settlement Agreement is fair and reasonable to the Class Members and should be granted preliminary approval.

Courts usually refuse to substitute their business judgment for that of counsel, absent fraud or overreaching. *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976) ("In reviewing a proposed settlement, the court should consider the judgment of counsel and the presence of good faith bargaining."), *overruled on other grounds* by *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). *Id.* The adequacy of Plaintiff's representation is also satisfied because Plaintiff's interests are coextensive with, and not antagonistic to, the interests of the Settlement Class. *See G.M. Sign, Inc. v. Finish Thompson, Inc*., No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869, at *15-*16 (N.D. Ill. Aug. 20, 2009). Because Plaintiff's claims are aligned with the claims of the other class members, Plaintiff has every incentive to vigorously pursue the claims of the class. Plaintiff has remained actively involved in this matter since its inception, contributing her time and attention to the pre-suit litigation research, and staying involved in the settlement process. Further, Plaintiff is represented by qualified and competent counsel with extensive experience in litigating consumer class actions, and FDCPA actions in particular. *See,* Exhibit 1 to Pl. Preliminary Notice of Attorney's Fees, Declaration of Daniel A. Edelman; *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc*., No. 07 Civ. 2898, 2012 WL 651727, at *10 (N.D. Ill. Feb. 28, 2012)(quoting *Wal–Mart Stores, Inc. v. Visa USA, Inc*., 396 F.3d 96, 116 (2d Cir.2005)).

## III.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE UNDER RULE 23

The question presented on a motion for preliminary approval of a class action settlement is whether the proposed settlement is "within the range of possible approval." *Armstrong*, 616 F.2d 305, 314 (7th Cir. 1980); *Kaufman v. Am. Express Travel Related Servs. Co., Inc*., 264 F.R.D. 438, 447 (N.D. Ill. 2009); *Manual for Complex Litigation*, (4th ed.), §21.62 and §21.63.

8

To grant preliminary approval, a court need only find that there is "probable cause to submit the [settlement] proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n-E. R.R.*, 627 F.2d at 634 (quoting *Manual For Complex Litigation* (3d ed.) § 1.46 n.10) (internal quotation marks omitted); *Newberg*, §11.25 (noting that "[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members) (citations omitted).

In making this determination, courts consider several factors, and this Court requested Plaintiff to discuss these five factors:  "(1) the strength of the plaintiffs' case on the merits compared to the amount of the defendants' settlement offer, (2) an assessment of the likely complexity, length and expense of litigation, (3) an evaluation of the amount of opposition to the settlement among affected parties, (4) the opinion of competent counsel, and (5) the stage of the proceedings and the amount of discovery completed at the time of settlement."  (*Dkt. No. 35*), *citing Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014); *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 6467, 653 (7th Cir. 2006).

A.    **The Settlement provides adequate relief to the settlement class given the risks posed by continued litigation**

In evaluating a proposed settlement, the court recognizes that the "essence of settlement is compromise" and will not represent a total win for either side. *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir.1996), quoting *Armstrong,* 616 F.2d 305, 315 (7th Cir.1980). Accordingly, the court is not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial. *In re Tiktok, Inc., Consumer Privacy Litig.*, 565 F.Supp.3d 1076, 1087 (N.D. Ill. 2021), quoting *Kaufman v. Am. Express Travel Related Servs. Co., Inc.*, 877 F.3d 276, 285 (7th

Cir. 2017); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F.Supp. 450, 534 (D.N.J.1997), *aff'd*, 148 F.3d 283 (3d Cir.1998); *E.E.O.C. v. Hiram Walker & Sons*, 768 F.2d 884, 889 (7th Cir.1985)."  As courts in this Circuit have noted, "[a] settlement need not provide the class with the maximum possible damages to be reasonable." *Douglas v. W. Union Co.*, No. 14 C 1741, 2018 WL 4181484, at *6 (N.D. Ill. August 31, 2018).

Because the traditional means for handling claims like those at issue here — individual litigation — would unduly tax the court system, require a massive expenditure of resources, and, given the small value of the claims of the individual class members, would be wholly impracticable, the proposed settlement is the best vehicle for Settlement Class Members to receive relief in a prompt and efficient manner.

In a class action filed under the FDCPA, the maximum possible recovery is (i) any actual damages sustained as a result of the alleged violation by the class members and (ii) the lesser of 1% of the Defendant's net worth or $500,000.00. 15 U.S.C. §1692k.  However, the Court, in its discretion, may award less than the maximum recovery.

Here, one percent of Defendants' cumulative net worth is $4,270.15.  Defendants will pay $4,000.00 to the Class Recovery which represents approximately 94% of the ***maximum*** recovery that a Court could award at a trial on the damages.  This is assuming, however, first, that the class is approved certification and, second, that Plaintiff is successful in proving liability against both Defendants.  Not to mention the considerable time and expense which may result from any procedural and substantive appeals at the various stages of litigation. Moreover, Defendants' current and projected lack of financial resources makes it likely that even successful litigation could ultimately result in little or no additional monetary relief for the Class.  In fact, if Defendants'

net worth decreases during the pendency of the litigation, this may decrease the amount of statutory recovery available to the Class.

The Class Recovery also compares favorably to the recovery available in an individual action under 15 U.S.C. §1692k where a Court could award anything between $0.00 and $1,000.00 in statutory damages.

Based on a conservative response rate between 5% to 10%, Plaintiff's counsel anticipates that each class member that submits a valid claim form will receive approximately $46 (at 5% response) to $23 (at 10% response). A recovery within the range achieved here compares favorably with other FDCPA settlements in this Circuit and beyond. *Hussain v. LSF9 Master Participation Trust*, 17-cv-625 (S.D. Ind.) (*Dkt. No. 84*) (class members recovered approximately $20); *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 290 (6th Cir. 2016) (crediting testimony that response rates in consumer class actions generally range from one to twelve percent); *Beattie v. Westmoreland Agency*, 2007 U.S. Dist. LEXIS 98158 (E.D. Wisc. Aug. 22, 2007) (4% response rate and class members recovered approximately $45); *Vallejo, Jr. v. National Credit Adjusters, LLC*, 10-cv-103 (*Dkt. Nos. 20, 23*) (N.D. Ind. Nov. 3, 2010) (approximate 8% response rate and class members recovered $29); *Parcher v. Weltman*, *Weinberg & Reis Co., LPA*, 04-cv-5747 (N.D. Ill. Jan. 13, 2006) (*Dkt. Nos. 27, 29*) (9.5% response rate and class members recovered approximately $23); *See Pierre v. Midland Credit Management, Inc*., 16-cv-2895 (N.D. Ill.) (*Dkt. No. 220*) (following jury trial, class members recovered $5.00 in statutory damages).

Furthermore, to assert an individual claim, a class member would first have to recognize that his or her rights were violated, and then retain a lawyer, participate in discovery and possibly a deposition and wait through litigation.  In contrast here, class members need to take minimal action to receive their *pro rata* share of the Class Member Recovery.

Here, litigation—including class litigation—is oftentimes expensive, time-consuming, complex and risky and would not result in a greater benefit to any class. Defendants deny liability, and therefore, Plaintiff would have to overcome challenges to obtain a favorable outcome. Plaintiff would need to successfully oppose any dispositive motions, as well as succeed on a motion for class certification and at trial. Given Defendants' limited financial resources, there is also a meaningful risk that any victory at trial would be hollow, leaving class members with nothing. Without the Settlement Agreement, the Class Members could wait years for any potential payment on their alleged claims, the future value of which is unknown and could risk further diminishment of Defendants' net worth, or even worse, that Defendants become completely defunct and uncollectible.

Moreover, it would be imprudent at this stage of the litigation to presume ultimate success on liability and thereafter. *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 739 (N.D. Ill. 2014) ("[T]he reality known to first year law students [is] that juries are inherently unpredictable, and there is no such thing as a sure winner either in pretrial proceedings or at trial.") (internal citation omitted) "It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced." *In re Nationwide Financial Services Litigation*, No. 2:08-CV-00249, 2009 U.S. Dist. LEXIS 126962, at *6 (S.D. Ohio, 2009), quoting, *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), aff'd, 440 F. 2d 1079, 1085-86 (2d Cir.), cert. denied, 404 U.S. 871, 92 S. Ct. 81, 30 L. Ed. 2d 115 (1971); *In re General Motors Pick-Up Truck Fuel Tank Prods. Liab. Litig*., 55 F.3d 768, 812 (3d Cir. 1995) (concluding that lengthy discovery and ardent opposition from the defendant were facts favoring settlement, which offers immediate benefits and avoids delay and expense). The proposed settlement is warranted by the length and expense of continued litigation.

The years of additional litigation would unnecessarily increase both the expense of the litigation and the risk for Class Members. *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir); *In re Mexico Money Transfer Litig*., 164 F. Supp. 2d 1002, 101.  Plaintiff and the Class Members should not be exposed to the risk of no recovery either because of changes in the law which may impact, in whole or part, a finding of whether Defendants violated the FDCPA or Plaintiff and the class's claims are actionable under the FDCPA or the Defendants' financial circumstances, or at all. As a result, this factor strongly weighs in favor of preliminary approval.

By reaching a favorable settlement early in the litigation, before Defendants expended their very limited resources on the defense of litigation, Plaintiff and the Class avoid significant expense and delay, and instead ensure a significant and early recovery for the Settlement Class Members. "[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985); *Isby v. Bayh, supra*, 75 F.3d at 1199; *In re Mexico Money Transfer Litig*., 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000).

Continued litigation also carries with it a decrease in the time value of money; "[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002); *see also Fitzsimmons*, 778 F.2d at 309 n.3; *Seiden v. Nicholson*, 72 F.R.D. 201, 208 (N.D. Ill. 1976) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of time, money and effort."). The Settlement Agreement, on the other hand, provides substantial immediate benefits.

Rather than embarking on years of protracted and uncertain litigation, Plaintiff and her counsel negotiated a Settlement that provides immediate, certain, and meaningful relief to all the class. *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("In short, the

settlement provides immediate value to the Class Members that is well within the range of—and may in fact significantly exceed—their expected recovery from proceeding to trial.") In sum, the arguable strength of the Settlement Class Member's claims compares favorably to the terms of the Settlement.

**B.      Continued Litigation Would be Complex, Costly and Lengthy**

Class settlement approval is also favored where "[s]ettlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte*, 805 F. Supp. 2d at 586. With this in mind, while Plaintiff's counsel strongly believes in the strength of the claims asserted, if this litigation were to continue, it would be lengthy, expensive and involve extensive motion practice, including a motion for class certification (and possibly a motion for decertification), motions for summary judgment and various pretrial motions, as well as the retention of experts, preparation of expert reports, and expert depositions. (*Dkt. No. 21*)

Additionally, even if the Settlement Class recovered a judgment at trial in excess of the what is provided by the Settlement, post-trial motions and any appellate process would deprive them of any recovery for years, and possibly forever in the event of a reversal. Instead, the settlement provides to every class member who submits a claim form very nearly full, monetary recovery now, not years from now, as well as certainty, with very minimal effort on the part of the class members.

**C.      The Reaction of the Settlement Class Members Will be Evaluated at Final Approval**

An analysis of the class members' reaction to the settlement is premature at this juncture. *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 349 (N.D. Ill. 2010). The Court should analyze this factor after the Class Notice is sent and the class members have had an

opportunity to comment on the Settlement Agreement. There are no other competing FDCPA class action cases pending against Defendants.

### D. Class Counsel Strongly Endorses the Settlement

The opinion of Class Counsel is also relevant to the question whether a settlement is fair, reasonable, and adequate under Rule 23." *Schulte,* 805 F.Supp.2d at 586-87; *Isby* at 1200. Many courts recognize that the opinion of experienced counsel supporting the settlement is entitled to considerable weight. *Armstrong*, 616 F.2d at 325; *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988); *Reed v. General Motors Corp*., 703 F.2d 170, 175 (5th Cir. 1983); *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2nd Cir. 1982); *In re Mexico Money Transfer Litigation, supra*, 164 F. Supp. 2d at 1020. In fact, courts are "entitled to rely heavily on the opinion of competent counsel," *Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982) (quoting *Armstrong v. Board of School Directors, supra*, 616 F.2d at 325); *Isby v. Bayh, supra*, 75 F.3d at 1200.

In this case, Plaintiff's counsel are experienced in consumer class action litigation. (Exhibit 1 to Pl. Prelim. Notice of Attorney's Fees). Based upon their analysis, the relief being offered to Settlement Class Members represents a significant recovery for the Settlement Class, particularly when weighed against Defendants' anticipated defenses and the inherent risks of continued litigation. Class Counsel strongly endorses this settlement and believes it is a great result for the class.

### E. Further Litigation is Unlikely to Result in Better Recovery to the Class

The last factor concerns the stage of the proceedings and amount of discovery completed at the time the settlement is reached. *Synfuel*, 463 F.3d at 653. This factor is significant because "it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc*., No. 07 C 2898, 2011 WL 3290302 (N.D.

Ill. July 26, 2011) (quoting *Armstrong*, 616 F.2d at 325) (internal quotations omitted). No further investigation, discovery and/or analysis would change Class Counsels' evaluation of this case or their opinion about this settlement.

Similar to *Heuberger v. Smith*, No. 3:16-CV-386 JD, 2019 U.S. Dist. LEXIS 118174, at *8-9 (N.D. Ind. Jan. 4, 2019), in which this Court granted approval the settlement, although this case is still in its early stages, resolution avoids expense and delay and ensures the class members "receive their settlement payments now instead of seeking to recover a judgment months or years down the line." *Id.* at *8-9 ("Hedging against those risks by agreeing to a settlement at this stage is not indicative of overreaching …but of a reasoned and counseled decision by both sides.").

Every class action—indeed, every case—involves some level of uncertainty on the merits. *See In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) ("Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."). Settlements resolve that inherent uncertainty, and are therefore strongly favored by the courts, particularly in class actions. This action is not unique in this regard, and, absent settlement, the parties would be forced to litigate complex issues, including the propriety of class certification and the class is unlikely to receive a recovery more favorable than that provided by the Agreement. *See Midland Funding, LLC v. Brent*, No. 3:08 CV 1434, 2011 WL 3557020, at *16 (N.D. Ohio Aug. 12. 2011) ("The Fair Debt Collection Practices Act is a set of complex laws with many components. The instant case would be very expensive to fully litigate, and might take years to finally resolve through the course of trial and appeal, creating additional attorney's fees and reducing any potential payout to the class.")

Courts regularly approve settlements at earlier stages of discovery than in this case. See *Isby v. Bayh*, 75 F.3d 1191 (approving settlement early in case where the parties had conducted a

16

thorough investigation of the background and facts pertinent to the claims). Courts also encourage parties to settle class actions early, without expending unnecessary resources. *McCue v. MB Fin., Inc.*, 15 CV 988, 2015 WL 4522564, at *4 (N.D. Ill. July 23, 2015), quoting *Yuzary v. HSBC Bank USA, N.A.*, No. 12-cv-3693, 2013 WL 5492998, at *5 (S.D.N.Y. Oct. 2, 2013) ("early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere").

Here, the parties engaged in informal discovery in this matter. Such informal discovery included identification of the number of letters Defendants sent during the settlement class period, a discussion of Defendants' defenses and provision of Defendants' insurance policies and financial documents. Plaintiff's counsel examined the insurance policies and financial documents. The parties further discussed certain risk factors affecting Defendants' finances, as well as assessments of whether insurance coverage was available.

Because class members will receive 94% of the maximum in statutory damages of what they could receive had Plaintiff prevailed on liability and damages, and because the settlement avoids the risk, time, and expense of continued litigation, the settlement is fair, reasonable, and adequate. As a result, the Court should approve the settlement. See *Shulte*, 805 F. Supp. 2d at 585-86 (N.D. Ill. 2011).

## IV.    THE METHOD OF PROVIDING RELIEF IS EFFECTIVE AND TREATS ALL MEMBERS OF THE CLASS FAIRLY

"[T]he effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," is also a relevant factor in determining the adequacy of relief. Fed. R. Civ. P. 23(e)(2)(C)(ii). The Committee Note to the 2018 amendments to Rule 23(e)(2) says that this factor is intended to encourage courts to evaluate a proposed claims process "to ensure that it facilitates filing legitimate claims. A claims processing method should

deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." This settlement proposes the gold-standard in class member relief: cash payments. Cash Awards will be distributed equally on a *pro rata* basis to all Settlement Class Members who submit a valid claim. (<u>Appendix A</u>, ¶¶ 11, 15(a),17(a)). Accordingly, all Class Members will receive the same cash award at the same time. For these reasons, the settlement relief is both effective and treats all members of the Settlement Class fairly.

To make a claim, class members need only provide to the Settlement Administrator (i) their name and residential address; (ii) an attestation confirming they are the person to whom the notice was directed or otherwise entitled to share in the recovery and (iii) they have not filed for bankruptcy on or after August 18, 2019. This is not the type of "unduly demanding" claim form process with which Rule 23(e)(2) is concerned. Rather, it is intended to facilitate the purpose of the Rule in deterring and defeating unjustified claims. *Id.*

The Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement. Fed. R. Civ. P. 23(e)(1); see also MCL 4th § 21.312. The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Here, the proposed form of notice does just that. (<u>Exhibit 1</u> to <u>Appendix A</u>) The proposed notice is clear, and straightforward, and provides Settlement Class Members with enough information to evaluate whether to participate in the settlement. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 808 (1985)) (explaining a settlement notice must provide settlement class members with an opportunity to present their objections to the settlement).

In the April 3, 2023 order, this Court requested "an explanation explaining why direct payment without requiring a claims form would be unreasonable." *Hollins v. Church Church Hittle + Antrim*, 20-CV-304, 2023 U.S. Dist. LEXIS 58013, at *11 (N.D. Ind. Apr. 3, 2023).

It is true that Courts are "especially wary" of complex claims processes paired with either "claims-made settlements," distributing only the "amount actually claimed by the class members," or reversionary funds. 4 Newberg § 13:53. On the other hand, like here, a settlement that requires defendants to disgorge a predetermined sum "is more likely to be found fair, reasonable, and adequate." *T.K. v. Bytedance Technology Co., Ltd*., No. 19-CV-7915, 2022 U.S. Dist. LEXIS 65322, at *39 (N.D. Ill. Mar. 25, 2022)

The proposed Settlement provides for the Class Recovery to be paid in full, and divided equally among each Settlement Class Member that submits a valid claim form. Such distribution plans indicate equitable treatment of class members relative to each other. *T.K.*, 2022 U.S. Dist. LEXIS 65322, at *42. Generally, a settlement that provides for *pro rata* shares to each class member will meet this standard. *E.g., Burnett v. Conseco Life Ins. Co.,* No. 18-CV-0200, 2021 U.S. Dist. LEXIS 6510, 2021 WL 119205, at *9 (S.D. Ind. Jan. 13, 2021).

"Filing a claim form is a reasonable administrative requirement which generally does not impose an undue burden on members of a settlement class." *Hamilton v. SunTrust Mortg. Inc*., 13cv60749, 2014 U.S. Dist. LEXIS 154762, at *6 (S.D. Fla. Oct. 24, 2014). Given the length of time this matter has been pending and the mobility of debtors, a claim form is appropriate to ensure the recovery is being paid to the persons entitled to it and thwart fraudulent participation. *Lee v. Ocwen Loan Svc., LLC*, 14-60649,2015 U.S. Dist. LEXIS 121998, at *71 (S.D. Fla. Sep. 14, 2015).

"[T]here is nothing inherently suspect about requiring class members to submit claim forms in order to receive payment." *Schulte*, 805 F. Supp. 2d at 593. Like in *Schulte*, here, Defendants'

total monetary payment to the Class Recovery will remain the same regardless of the claims rate and none of the Class Recovery will revert back to either Defendant – the fund is divided equally among all class members that submit a claim form and if there are any uncashed settlement checks after distribution, those funds are awarded to a *cy pres* recipient.  (Appendix A, ¶15(d)).  *Schulte*, 805 F. Supp. 2d at 591; *See also, Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 499 [*747] (N.D. Ill. 2015) ("A cumbersome claims process is particularly suspect in the case of a reversionary settlement, that is, a settlement under which the defendant recaptures unclaimed funds"), citing *Schulte* and *Pearson v. NBTY, Inc*., 772 F.3d 778, 783 (7th Cir. 2014) (observing that the imposition of an unduly burdensome claims process typically benefit defendants who stand to recover leftover funds). Indeed, the Seventh Circuit instructs that "[m]oney not claimed by class members should be used for the class's benefit to the extent that is feasible…" *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 689 (7th Cir. 2013).

To respond to this Court's requests for further support, "[w]hile a claims-made settlement structure does not guarantee an award to all class members, it does tend to maximize the opportunity available to each class member." *Lee, supra*, 2015 U.S. Dist. LEXIS 121998, at *57-58 (S.D. Fla. Sep. 14, 2015), citing *Faught v. American Home Shield Corp*., 668 F.3d 1233, 1242 (11th Cir. 2011) (affirming approval of claims-made settlement where class members could receive full compensation "rather than mere pennies on the dollar for a uniform cash payment"); *In re Cendant Corp. Litig*., 264 F.3d 201, 250-51 (3d Cir. 2001) (explaining why a defendant can offer a higher percentage recovery in a claims-made class settlement).  Where recovery is limited to one percent of the Defendants' net worth, no matter the size of the class, direct payments without a claim form process, would in effect be negotiating for a smaller amount to go to Class Members.

This would also unfairly reward some Class Members for their own indifference at the expense of those who take the minimal step of returning the simple Claim Form to receive the larger amount.

## V. THE PROPOSED SETTLEMENT CLASS MEETS ALL THE REQUIREMENTS OF RULE 23 FOR CERTIFICATION

Under Federal Rule of Civil Procedure 23(a) the prerequisites to class certification are:

(1)  The class is so numerous that joinder of all members is impracticable,
(2)  There are questions of fact or law common to the class,
(3)  The claims or defenses of the representative parties are typical of the claims defenses of the class, and
(4) The representative parties will fairly and adequately protect the interest of the class.

Further, Federal Rule of Civil Procedure 23(b)(3) provides that a class action is maintainable if the above prerequisites have been met and: "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  *Id.*  Plaintiff contends (and Defendants do not dispute for purposes of settlement) that as demonstrated below, each of the requirements for certification of the Settlement Class is met.

### A.    Rule 23(a)(1) – Numerosity.

Fed. R. Civ. P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." The numerosity requirement is satisfied if it is reasonable to conclude that the number of members of the proposed class is greater than the minimum number required for class certification, which is usually 40.  *Swanson v. American Consumer Industries*, 415 F.2d 1326, 1333 (7th Cir. 1969) (40 class members sufficient); *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 184 (N.D. Ill. 1992) (72 class members).  In the present case, Defendants represented that, based on a review of their records, there are approximately 1,710 persons in the Settlement

Class.  This plainly satisfies the numerosity requirement.

  **B.**  **Rule 23(a)(2) – Commonality; and Rule 23(b)(3) – Common Questions of Law or Fact Predominate.**

   Fed. R. Civ. P. 23(a)(2) requires that there be a common question of law <u>or</u> fact.  Rule 23(b)(3) requires that the questions of law or fact common to all members of the class predominate over questions pertaining to individual members. The commonality requirement is satisfied if there are common questions linking the class members that are substantially related to the outcome of the litigation.  *Blackie v. Barrack*, 524 F.2d 891, 910 (9th Cir. 1975).  Common questions predominate if classwide adjudication of the common issues will significantly advance the adjudication of the merits of all class members' claims.  *McClendon v. Continental Group, Inc.*, 113 F.R.D. 39, 43-44 (D.N.J. 1986); *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 114 F.R.D. 48, 52 (S.D.N.Y. 1987); *Spicer v. Chicago Board Options Exchange*, CCH Fed.Sec.L.Rptr. [1989-90 Transfer Binder] ¶94,943, at p. 95,254 (N.D. Ill. 1990); *Alexander Grant & Co. v. McAlister*, 116 F.R.D. 583, 590 (S.D. Ohio 1987).  Where a case involves "standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement . . . is usually met." *Franklin v. City of Chicago*, 102 F.R.D. 944, 949 (N.D.Ill. 1984); *Patrykus v. Gomilla*, 121 F.R.D. 357, 361 (N.D. Ill. 1988).  Here, there are questions of law and fact common to the class that predominate over any questions affecting only individual class members.  The predominant common questions include:

> (1) Whether Defendants threaten or imply legal action without the intent to take such action;
> (2) Whether such practice violates the FDCPA.

  **C.**  **Rule 23(a)(3) – Typicality**.

   Rule 23 requires that the claims of the named Plaintiff be typical of the claims of the class:

> A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory. The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact.

*De La Fuente v. Stokely Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted). In the instant case, typicality is inherent in the class definition. By definition, each of the Class Members has been subjected to the same practice as the named Plaintiff, namely they are individuals to whom Defendants sent a letter that threatened or implied a lawsuit would be filed without the intention to file suit.

   D.    **Rule 23(a)(4) – Adequacy of Representation**.

The adequacy of representation requirement involves two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the plaintiff must not have interests antagonistic to those of the class. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).Plaintiff will fairly and adequately protect the interests of the class. Plaintiff  retained counsel experienced in handling class actions and claims involving alleged unlawful business practices. Counsel's qualifications are set forth in <u>Exhibit 1</u> to Pl. Preliminary Notice of Attorney's Fees.  Neither Plaintiff nor Plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

   E.    **Rule 23(b)(3) – Class Action Is Superior to Other Available Methods of Resolving This Controversy**.

A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims is small because generally the class members are unaware of their rights and have damages such that it is not feasible for them to bring individual actions. "[O]ne of the primary functions of

the class suit is to provide a device for vindicating claims which, taken individually, are too small to justify legal action but which are of significant size if taken as a group." *Brady v. LAC, Inc.*, 72 F.R.D. 22, 28 (S.D.N.Y. 1976).

The special efficacy of the consumer class action has been noted by the courts and is applicable to this case:

> A class action permits a large group of claimants to have their claims adjudicated in a single lawsuit. This is particularly important where, as here, a large number of small and medium sized claimants may be involved. In light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied . . . .

*In re Folding Carton Antitrust Litigation*, 75 F.R.D. 727, 732 (N.D. Ill. 1977) (citations omitted).

Another court has noted:

> Given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action. As Professors Wright, Miller, and Kane have discussed in analyzing consumer protection class actions such as the instant one, 'typically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis. These financial barriers may be overcome by permitting the suit to be brought by one or more consumers on behalf of others who are similarly situated.' 7B Wright et al., §1778, at 59; see, e.g., <u>Phillips Petroleum Co. v. Shutts</u>, 472 U.S. 797, 809 (1985) ('Class actions . . . may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.'). The public interest in seeing that the rights of consumers are vindicated favors the disposition of the instant claims in a class action form.

*Lake v. First Nationwide Bank*, 156 F.R.D. 615, 625 (E.D. Pa. 1994).

WHEREFORE, Plaintiff respectfully requests that the Court enter an order in the form of Exhibit 2 to the Agreement, which (i) preliminarily approves the Agreement; (ii) preliminarily certifies the class mentioned above for settlement purposes only; (iii) appoints Beth Hollins as Class Representative and Edelman, Combs, Latturner & Goodwin, LLC as class counsel; (iv) schedules a hearing for final approval of the Agreement; (v) approves Exhibit 1 to the Agreement

as notice and claim form to the Class to be directed by First Class U.S. Mail to the last known address of the Class Members as shown from Defendants' records; (vi) sets dates for Class Members to submit claim forms, opt out, and object, and (vii) finds that the mailing of notice satisfies due process and Fed. R. Civ. P. 23.

Respectfully submitted,

/s/ Heather Kolbus
Heather Kolbus

Daniel A. Edelman
Heather Kolbus
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, IL   60603
(312) 739-4200

## <u>CERTIFICATE OF SERVICE</u>

I, Heather Kolbus, certify that on May 11, 2023, I caused a true and accurate copy of the foregoing document to be filed via the Court's CM/ECF system which caused notice to be sent via email to the following:

David M. Schultz – dschultz@hinshawlaw.com
Hinshaw & Culbertson LLP
151 N. Franklin Street, Suite 2500
Chicago, IL  60606

Jennifer J. Kalas – jkalas@hinshawlaw.com
Hinshaw & Culbertson LLP
322 Indianapolis Blvd., Suite 201
Schererville, IN  46375

/s/ Heather Kolbus
Heather Kolbus

Daniel A. Edelman
Heather Kolbus
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, IL   60603
(312) 739-4200

26